the billing system involved, and not from the defendant's status as a physician.

<u>United States v. Long</u>, 122 F.3d 1360 (11th Cir. 1997) demonstrates the inappropriateness of applying this enhancement in this case. Long was a foreman employed in the United States Penitentiary in Atlanta. He was arrested and eventually pleaded guilty to attempting to provide cocaine to an inmate in a federal prison. The trial judge adjusted Long's sentence for abuse of a position of trust. On appeal, Long challenged the adjustment, and the government countered that Long abused his position because as a prison employee, he was not searched while entering the prison. The Eleventh Circuit reversed, finding that the government's argument would extend the enhancement to virtually every employment situation because employers "trust" their employees. Such a broad application, the court noted, was clearly not intended. <u>Long</u>, 122 F.3d at 1365-66.

In the present case, Mr. McCarthy did not have any professional or managerial discretion as to whether a loan would be approved, hence he did not occupy a "position of public or private trust." On the contrary, the fraud perpetrated by Mr. McCarthy is analogous to a bank teller – who might falsify documents to perpetrate a fraud, but does not use managerial discretion in order to effectuate it. USSG section 3B1.3 (application note 1). Therefore, there is no factual basis in the Report sufficient to justify imposition of this sentencing enhancement.

### D. A TWO-LEVEL DOWNWARD ADJUSTMENT ON THE BASIS THAT MARK McCARTHY WAS A "MINOR PARTICIPANT" AMONG THE INDIVIDUALS INVOLVED IN THE OFFENSE UNDER USSG § 3B1.2 SHOULD BE IMPOSED UNDER THE FACTS AND CIRCUMSTANCES IN THIS CASE

In comparison to the other individuals in this case, Mark McCarthy's role in the conspiracy was that of a "minor participant" (entitled to a two-level decrease) among the individuals involved in the offense under USSG § 3B1.2. The Probation Department Report is replete with numerous facts establishing that compared to others in the conspiracy such as Elliot Beals, George Petropolous, Albert Innarelli, Michael Bergdoll, Anthony Matos, and Pasquale Romeo, Mr. McCarthy was comparatively a minor participant.

USSG § 3B1.2 Mitigating Role, provides:

> Based on the defendant's role in the offense, decrease the offense level as follows:
>
> (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
>
> (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
>
> In cases falling between (a) and (b), decrease by 3 levels.

Accordingly, in a crime involving multiple participants, the Court may decrease a defendant's offense level by two to four levels if the defendant had a mitigating role in the offense: a two-level adjustment for minor participation and a four-level adjustment for minimal participation. USSG § 3B1.2. The difference between a "minimal" and a "minor" participant is a difference of degree, not kind. United States v. Sanchez, 354 F.3d 70, 74 n. 2 (1st Cir.2004), citing, United States v. Almanza, 225 F.3d 845, 847 (7th Cir.2000). Defendants who are "plainly among the least culpable of those involved in the conduct of a group" are entitled to a downward adjustment as a minimal participant. U.S. v. DiIorio, 948 F.2d 1, 5 (1st Cir. 1991); USSG § 3B1.2, comment (n.4). A defendant may fit in this category if he is shown to lack "knowledge or understanding of the scope or structure of the enterprise and of the activities of others." Id. A two-level reduction is available for those who are also less culpable, "but whose role could not be described as minimal." U.S. v. Rosado-Sierra, 938 F.2d 1, 1 (1st Cir. 1991); USSG § 3B1.2, comment (n.5). For those defendants falling between "minimal" and "minor," a three-level reduction is available. USSG § 3B1.2.

The Report unequivocally establishes that these other individuals, Elliot Beals, George Petropolous, Albert Innarelli, Michael Bergdoll, Anthony Matos, and Pasquale Romeo were the ringleaders and organizers of the conspiracy. In order to determine whether to apply this adjustment, comparison to these other individuals must be made. Certainly, Mark McCarthy does

22

not claim that he was a "minimal participant" shown to lack "knowledge or understanding of the scope or structure of the enterprise and of the activities of others." However, in this case, the PSR establishes that compared to these other individuals, Mark McCarthy's role in the concerted criminal activity was that of a "minor" participant. See, e.g., U.S. v. Moeller, 80 F.3d 1053 (5th Cir. 1996); U.S. v. Westerman, 973 F.2d 1422 (8th Cir. 1992); U.S. v. Petti, 973 F.2d 1441 (9th Cir. 1992); U.S. v. Mena, 968 F.Supp. 115 (E.D.N.Y.1997). Accordingly, a two level reduction must be applied pursuant to USSG § 3B1.2.

In its Response to the Defendant's Objections, the Government makes the incredulous assertion that because Mark McCarthy acted as a "mortgage broker,"[9] as well as "flipped" properties himself, he was more involved than Elliot Beals, George Petropolous, Albert Innarelli, Michael Bergdoll, Anthony Matos, and Pasquale Romeo. Review of the PSR provides that it was these other individuals who were the ringleaders and instigators of the conspiracy, who involved and implicated other individuals such as the Mark McCarthy in order to accomplish their goals. Certainly, as Mark McCarthy became involved in these transactions he performed criminal acts of falsifying documents in order to assist in obtaining mortgage loans that would not have been approved otherwise. However, there was a hierarchy to the conspiracy, and Elliot Beals, George Petropolous, Albert Innarelli, Michael Bergdoll, Anthony Matos, and Pasquale Romeo were at the apex. Mark McCarthy was not at the bottom of the hierarchy, he was not a "minimal participant." But, when compared to these other individuals such as Elliot Beals, George Petropolous, Albert Innarelli, Michael Bergdoll, Anthony Matos, and Pasquale Romeo, Mark McCarthy's role in the conspiracy was that of a "minor" participant. See, e.g., U.S. v. Petti, 973 F.2d 1441 (9th Cir. 1992) (Defendant qualified for reduction in offense level in money laundering scheme, even though defendant performed critical functions as member of conspiracy, where defendant was not privy to all mechanics of laundering operation and his role was subordinate to that of coparticipants');

---

[9] Inherently incorrect, as he was a "mortgage originator."

23

U.S. v. Munoz, 36 F.3d 1229 (1st Cir. (Mass.) 1994) (Drug defendant who had been given reduction in Sentencing Guidelines base offense level as "minor participant" in conspiracy was not entitled to further reduction as "minimal participant"; defendant had been involved in at least four cocaine transactions and performed number of different functions, including guarding drugs, conducting countersurveillance, and delivering drugs to agent); U.S. v. Cochran, 14 F.3d 1128 (6th Cir. 1994) (Finding that defendant who accompanied his cousin on trip to purchase methamphetamine was "minor" participant in drug conspiracy offense entitled to two-level-offense level reduction, rather than "minimal" participant entitled to four-level reduction, was supported by evidence of defendant's knowledge regarding drug enterprise, and by fact that he accompanied cousin on at least two drug-buying trips, that he regularly purchased methamphetamine from cousin, and that he served as cousin's confidante in drug dealing matters); U.S. v. Davis, 878 F.2d 1299 (11th Cir. 1989) (Defendant's full understanding of scope and nature of conspiracy precluded her designation as "minimal participant" so as to warrant decrease in offense level under sentencing guidelines by four levels, but, rather, she could only be designated "minor participant" entitled to two-level decrease).

Accordingly, based on all of the above, the Court should determine that in view of the entire conspiracy, Mark McCarthy's role in the entire concerted criminal activity was that of a "minor participant," warranting a two level reduction to the Sentencing Guideline calculation pursuant to USSG § 3B1.2.

E. **GUIDELINES SENTENCING RANGE**

The Defendant, Mark McCarthy, respectfully submits that based upon the above rendition regarding the proper assessment of the "loss" enhancement under the Guidelines, as well as an adjustment for the minor role in the concerted criminal activity, the Guidelines calculation for the total offense level should be as follows:

| | |
|---|---|
| **Base Offense Level (2B1.1(a)(1)):** | 6 |
| **Specific Offense Characteristic (sec. 2B1.1(b)(1)(H)):** | <u>14</u> |
| **Base Offense Level:** | 20 |
| | |
| **Specific Offense Characteristics (sec. 2S1.1(b)(2)(A)):** | 1 |
| **Adjustment for Role in the Offense (sec. 3B1.2(a)):** | -2 |
| **Victim Related Adjustment:** | 0 |
| **Adjustment for Obstruction of Justice:** | <u>0</u> |
| **Adjusted Offense Level (subtotal):** | 19 |
| | |
| **Adjustment for Acceptance of Responsibility (Guilty Plea):** | <u>-3</u> |
| **Total Offense Level:** | 16 |

The Defendant concurs with the Probation Department's Presentence Report, that as a result of the Defendant's complete lack of involvement in any criminal conduct other than the instant offense, he is a Category I offender per the Sentencing Guidelines. As a consequence of the above, and based on a Total Offense Level of 16, the Sentencing Guideline's range of sentence falls within Zone D, 21 - 27 months. Under the facts and circumstances in the present case the Defendant, Mark McCarthy, respectfully submits that the proper sentence to be imposed upon him by the Court is a split sentence of imprisonment and home detention.

25

The Defendant recognized that technically under the Sentencing Guidelines, split sentences are available only when the Offense Level falls in Zone C. However, it is well established that under the Supreme Court's decision in <u>Booker</u> the Guidelines are advisory, and the Defendant respectfully submits that the Court nevertheless impose a split sentence of imprisonment and home detention under the facts and circumstances in this case (see below). If, however, the Court is inclined to impose a sentence literally consistent with the Guidelines requirements that the Total Offense Level must fall in Zone C, the Defendant respectfully requests that the Court impose a "downward departure" of the Total Offense level for the reasons as set forth in **Part III.** below.

### III.  FACTORS WARRANTING A DOWNWARD DEPARTURE

It is well established that under certain circumstances, the Sentencing Guidelines recognizes that "cookie cutter" sentencing is not always justified or even desirable. In order to effectuate this sensibility, the Guidelines provides for various grounds for "departure" from the Guidelines Sentencing Range. In the present case, there are circumstances of the offense as well as of the offender warranting departure.

#### A.  THE CIRCUMSTANCES SURROUNDING THE OFFENSE JUSTIFY A DOWNWARD DEPARTURE IN THIS CASE

In the present case, it cannot be said that Mark McCarthy is solely responsible for the loss incurred. The District Court is authorized to depart downward if a defendant was not involved in all of his co-conspirators efforts to defraud the victim, causing the loss figure to overstate the defendant's culpability. <u>United States v. Arutunoff</u>, 1 F.3d 1112 (10th Cir. 1993); <u>United States v. Gregorio</u>, 956 F.2d 341, 344-348 (1st Cir. 1992) (multiple causation of victim loss justifies downward departure). Likewise, when the Loss Table Overstates the amount of loss or the seriousness of the offense downward departure is warranted. U.S.S.G. § 2B1.1, App. Note 16 (B) (eff. Jan. 25, 2003 and former App. Note 15(B), eff. Nov. 1, 2001) (where "the offense level

26

determined under [2B1.1] substantially overstates the seriousness of the offense...a downward departure may be warranted"); United States v. McBride, 362 F.3d 360 (6th Cir. 2004) (in bad check and bankruptcy scam, remanded for district court to consider whether to depart downward under 2B1.1 where intended loss of over $1 million "substantially overstated" actual loss); United States v. Oligmueller, 198 F.3d 669 (8th Cir. 1999) (upheld downward departure where actual loss amount of $829,000 stemming from false loan application overstated risk to defrauded bank warranting use of loss figure of $58,000 and offense level 11 where Defendant had sufficient unpledged assets to support the loan amount and had paid the bank $836,000 of the amount owed when fraud discovered); United States v. Rostoff, 53 F.3d 398 (1st Cir. 1995) (multiple causes of the losses including permissive attitude of bank's senior management, buyer's greed, and unexpected nosedive of condo market warranted downward departure); United States v. Gregorio, 956 F.2d 341 (1st Cir. 1992) (departure granted because losses resulting from fraudulently obtained loan were not caused solely by the defendant's misrepresentation); United States v. Roen, 279 F.Supp. 2d 986 (E.D. Wisc. 2003) (in mail fraud scheme where Defendant wrote checks on closed bank accounts in the amount of $1.2 million as payment for various items he attempted to buy, but none of the checks were honored and defendant did not obtain any goods, departure of nine levels granted on the grounds that "the amount of loss bore little or no relation to economic reality"); United States v. Oakford Corp, 79 F.Supp. 2d 357 (S.D.N.Y. 2000) (13 level departure granted where offense level overstates gravity offense-here each defendant personally realized "only small portion of the overall gain" of $15 million-and where agency tacitly encouraged floor brokers to "push the envelope").

In the present case, Mark McCarthy was certainly a factor in the loss incurred, but he was not the only cause. Yet, the Guidelines Total Loss calculation is performed as if the Defendant was the only cause for the loss. Further, Mark McCarthy realized only a small portion of the overall gain. Based on these offense characteristics in the present case, a downward departure is

27

warranted to bring Mark McCarthy's Total Offense Level into "Zone C."

## B. THE CIRCUMSTANCES SURROUNDING THE OFFENDER, MARK McCARTHY, JUSTIFY A DOWNWARD DEPARTURE IN THIS CASE

In addition to "offense characteristics" justifying downward departure, the Sentencing Guidelines also provide for downward departures based on "offender characteristics." Like many defendants, Mark McCarthy has a family, including two young children, and he is responsible for their support.[10] Mark McCarthy personally cares for his children at home Mondays through Wednesdays while his wife is at work. He personally prepares their meals, dresses them, takes them to activities and, when necessary doctors and health care professionals. Mark is a central figure in his young children's lives.

Like many defendants, Mark McCarthy has a zero criminal offense history. He is 42 years old, and this is his first offense. Although the instant offense is not technically "aberrant behavior" under the Guidelines because it involved more than one transaction, the fact that Mark McCarthy has been a law abiding citizen for most of his life is salient. The Guidelines, in part, account for this by his characterization as a Category I offender. However, what the Guidelines do not directly account for, yet the Court is authorized to consider in imposing a downward departure, is Mark McCarthy's charitable and community activities and good works.

In United States v. Cooper, 394 F.3d 172 (3rd Cir. 2005), a securities fraud and tax evasion case, with a sentence range of 14-21 months, the Court held that a four-level downward sentencing departure for "good works" and sentence of probation was warranted for defendant's "exceptional" good works who did not simply donate money to charity – but also organized and ran youth football team in depressed area, mentored its members, and helped several members

---

[10] Certainly having a family, young children to support does justify a downward departure in and of itself under the Sentencing Guidelines. But certainly, this is a characteristic of the Defendant's life for the Court to consider.

28

attend better high schools or go to college, which qualified as exceptional because they entail "hands on personal sacrifices which have a dramatic and positive impact on the lives of others." Similarly, in United States v. Serafini, 233 F.3d 758 (3d Cir. 2000), the Court held that community service and charitable works performed by the defendant, a state legislator convicted of perjury in a federal grand jury investigation, were sufficiently "extraordinary and exceptional" to justify a three-level downward departure for community and charitable activities (providing a $300,000 guarantee for medical treatment of a terminally ill patient and mentoring a seriously injured college student, and showed generosity of time as well as money). In United States v. Woods, 159 F.3d 1132 (8th Cir. 1998), the defendant's exceptional charitable efforts - bringing two troubled young women in her home, paying for them to attend private high school - and also assisting elderly friend to move from nursing home to apartment - justified a downward departure. In United States v. Jones, 158 F.3d 492 (10th Cir. 1998), where the defendant pled guilty to possession of a firearm by a prohibited person, the Tenth Circuit held that the district court did not abuse its discretion in departing downward by three levels when, as one of eleven factors, it considered the defendant's long history of community service.

Although the Court of Appeals held the amount of downward departure was too great, in United States v. Crouse, 145 F.3d 786 (6th Cir. 1998), the Court held that where the Defendant was a chief executive officer of a company found to have fraudulent distributed orange juice adulterated with sugar, and where the judge departed downward 13 levels to impose home confinement where guidelines were 30-37 months, the Court of Appeals held that it will defer to the District Court's decision that the Defendant's charitable contributions were outstanding and, together with other factors, justified downward departure.

In United States v. Rioux, 97 F.3d 648 , 663 (2d Cir. 1996), the Court affirmed a downward departure based on charitable fund-raising conduct as well as the Defendant's poor medical condition); see also, United States v. Canoy, 38 F.3d 893 (7th Cir. 1994) (charitable and

29

civic activities may, if exceptional, provide a basis for departure).

As provided by the letters of support filed with the Court, Mark McCarthy has been active not only with charitable contributions, but also with contributing his time to charitable causes. Mark has been exceedingly active in the Barbara Mantoni Santaniello Research Fund, organized for the purpose of charitable works regarding pancreatic cancer. The Fund works in association with the Lustgarten Foundation. The Fund was established in 2001 and annually hosts a golf benefit followed by a dinner and auction held here in Springfield. Since 2001 to the present, the Fund has contributed over $165,000.00 to the Lustgarten Foundation. Mark McCarthy's activities include not only charitable donations, but actively and extensively donating his time towards the Fund's efforts to raise funds. More specifically, Mark has been a committee member of the Fund since its inception in 2001; and Mark's efforts include not only soliciting golfers, but obtaining substantial sponsorships and raffle and auction prizes. The efforts of Mark in monetary value can be estimated annually at approximately $2,500 (i.e. sponsorships and prizes). The value of Mark's support and time volunteered provided the Fund is immeasurable and invaluable.

In an ironic twist of fate, Mark's mother, Isabelle, was diagnosed with pancreatic cancer in 2002 and, unfortunately, lost her courageous battle with that insidious disease in October, 2002.

Based on Mark's generous efforts, financial contributions and sacrifices of time and energy towards this charitable and community activity, a downward departure is warranted to bring Mark McCarthy's Total Offense Level into "Zone C." Consideration of both the offense characteristics described above along with Mark's charitable good works provides an even more compelling basis for downward departure under the facts and circumstances in the present case.

## VI. RECOMMENDED SENTENCE

The Defendant, Mark McCarthy, respectfully submits that the proper sentence to be imposed in the present case is a split sentence of imprisonment and home detention. Under current sentencing jurisprudence, the Court must fashion "a sentence sufficient, but not greater than necessary," for achievement of the legitimate objectives of sentencing. 18 USCA § 3553(a); United States v. Booker, 543 U.S. 220 (2005). A split sentence in the present case would achieve these legitimate goals of sentencing.

Mark recognizes that what he did was wrong, and that as a result he must bear the consequences for his actions. By requesting the Court impose a split sentence of imprisonment and home detention, Mark has not shied away from his acceptance of responsibility or attempt to avoid receiving punishment for his crime. The proposed sentence imposes incarceration, but also allows for consideration that in due course, he can return to society and provide the support his family desperately needs while still undergoing the further punishment of home detention.

There are multiple factors weighing heavily in favor of the imposition of such a sentence in the present case, including Mark's role in the concerted criminal activity, his absence of any criminal offender history, his employment record, his excellent record of service to the community. In all other respects than the instant offense, Mark McCarthy has been a responsible and productive citizen of our society, and there is every reason to believe that he will continue to be so upon his return. There is simply no need in this case to protect the public by removing Mark McCarthy from its purview for an extended period of time. There is simply no reason to believe that recidivism of criminal conduct is a concern in this case.

In addition, Mark, and his family, have already been substantially punished as a result of his wrongdoing. They have been irrevocably tainted by the stigma attached to his conduct and his plea in a community where they had lived as respected members for their entire lives. Significantly, there has been tremendous financial consequences that have befallen Mark's family

as a result of this case. Certainly, Mark brought this upon himself. It is unfortunate his family must suffer for it. A lengthy sentence of imprisonment benefits no one and harms many. A split sentence of imprisonment and home detention would effectuate the goals of punishment and deterrence while minimizing unnecessary adverse consequences to others. Such a sentence "is sufficient, but not greater than necessary," for achievement of the legitimate objectives of sentencing. United States v. Neiman, 828 F.Supp. 254 (S.D.N.Y.1993) (departure from Sentencing Guidelines is appropriate if incarceration would be ineffective for purposes of punishment for deterrence and for supervision for prevention of further crime, and if incarceration would be counterproductive from viewpoint of rehabilitation). Such a sentence provides sufficient measure of accountability and punishment for Mark McCarthy's conduct in this case, while remaining sensitive to the multiple mitigating factors involved, and would allow Mark McCarthy to return to society in a reasonable amount of time where he could continue to contribute to the care and welfare of his family.

The case of U.S. v. Rostoff, 53 F.3d 398 (1st Cir. 1995), is instructive in this regard. This case involved a widespread conspiracy involving fraudulently inducing a federally insured financial institution, the Bank for Savings, to grant several hundred loans, totaling in excess of $30,000,000, to persons purchasing condominium units from David Rostoff, Steven Rostoff, and James Harris. The bank's closing attorney, defendant Bonaiuto, and the manager of the bank's mortgage department, defendant DiCologero, knowingly participated in the fraud scheme. The court calculated that the offense level for the Rostoff brothers and Bonaiuto was 20, and that for Harris and DiCologero it was 18. The court factored in the defendants' criminal history scores – all were first offenders – and arrived at a GSR of 33-41 months at OL-20 and a GSR of 27-33 months at OL-18. Finding, however, that in each instance the amount of loss overstated the seriousness of the particular defendant's criminality, Judge Zobel departed downward. She sentenced David and Steven Rostoff to serve 15-month terms of immurement; sentenced Harris to

a nine-month prison term; sentenced Bonaiuto to two years probation, six months of which was to be served in a community treatment center; and sentenced DiCologero to two years of straight probation. On appeal, the First Circuit upheld the downward departure. Id.

United States v. Rostoff provides a most pertinent yard stick regarding the sentencing concerns for Mark McCarthy. Mark McCarthy's case provides a far more compelling basis for the imposition of a split sentence in this case. His Total Offense Level is less than the defendants in Rostoff, where the harshest sentence was 15 months imprisonment and the Defendant, DiCologero, was sentenced to two years of straight probation for his extensive involvement in a fraudulent scheming causing in excess of $30,000,000 in loss. Given the totality of circumstances involved in this case, there is every reason to impose a split sentence of imprisonment and home detention upon Mark McCarthy.

## CONCLUSION

Considering the facts and circumstances in this case, the Defendant, Mark McCarthy, respectfully requests this Honorable Court impose a split sentence of imprisonment and home detention. In addition, the Defendant respectfully requests that the Court Order that he be allowed to self-surrender, and his ability to do so would favorably impact his designation by the Bureau of Prisons. Finally, a recommendation by this Court that he be designated to a minimum security

Federal Prison, particularly the one located at Devens, Massachusetts, is warranted by the non-violent nature of the offense, Mark McCarthy's lack of criminal history, his health and his family circumstances.

                                    THE DEFENDANT,
                                    MARK McCARTHY

By: /s/ Robert T. Santaniello
ROBERT T. SANTANIELLO, ESQ.
SANTANIELLO & SANTANIELLO
83 State Street, 3rd Floor
Springfield, MA 01103
Tel.: (413) 781-2130
Fax.: (413) 732-7515
BBO#560010

## CERTIFICATE OF SERVICE

I, Robert T. Santaniello, Esq., hereby certify that I caused the foregoing document to be served upon the United States Attorney's Office and the Probation Department, U.S. District Court, at 1500 Main Street, Springfield, MA, by first class mail, postage prepaid, this 6th day of October, 2006.

/s/ Robert T. Santaniello
ROBERT T. SANTANIELLO, ESQ.